**SLIP OP. 07-183**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| MICRON TECHNOLOGY, INC., | : |
| Plaintiff, | : |
| v. | : |
| UNITED STATES, | : Before: Jane A. Restani, Chief Judge |
| Defendant, | : Consol. Court No. 06-00133 |
| and | : |
| QIMONDA NORTH AMERICA CORP.; HYNIX SEMICONDUCTOR INC.; and HYNIX SEMICONDUCTOR AMERICA INC., | : |
| Defendant-Intervenors. | : |

OPINION

[Plaintiff's motion for judgment on the agency record denied. Defendant-Intervenors' Hynix Semiconductor Inc. and Hynix Semiconductor America Inc. motion for judgment on the agency record denied. Plaintiff's motion for remand to supplement the administrative record denied.]

Dated: December 19, 2007

King & Spalding, LLP (Gilbert B. Kaplan, Cris R. Revaz, Daniel L. Schneiderman, and Jeffrey M. Telep) for the plaintiff.

Jeffrey S. Bucholtz, Acting Assistant Attorney General; Jeanne E. Davidson, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (David F. D'Alessandris) for the defendant.

Kelley Drye Collier Shannon (Eric R. McClafferty and Kathleen W. Cannon) for defendant-intervenor Qimonda North America Corp.

McKenna Long & Aldridge, LLP (Jeffrey M. Winton) for defendant-intervenors Hynix Semiconductor Inc. and Hynix Semiconductor America Inc.

Restani, Chief Judge: This matter represents the consolidation of two complaints against defendant United States and is before the court on motions for judgment on the agency record by defendant-intervenors Hynix Semiconductor Inc. and Hynix Semiconductor America Inc. (together "Hynix") and plaintiff Micron Technology, Inc. ("Micron"), challenging the Department of Commerce's ("Commerce") findings in the first administrative review of a countervailing duty order on Dynamic Random Access Memory Semiconductors ("DRAMS") from South Korea. Hynix, a South Korean manufacturer of DRAMS, challenges Commerce's findings that elements of a financial restructuring constituted countervailable subsidies under 19 U.S.C. § 1677(5) (2000). Micron, a domestic DRAMS manufacturer, challenges Commerce's finding that Hynix began receiving the benefit of a debt to equity swap in 2002, rather than in 2003.

## BACKGROUND

In 2003, Commerce issued a countervailing duty order on DRAMS from South Korea, see Notice of Countervailing Duty Order: Dynamic Random Access Memory Semiconductors from the Republic of Korea, 68 Fed. Reg. 47,546 (Aug. 11, 2003), based on its finding that the Government of Korea ("GOK") entrusted or directed private entities to make financial contributions to Hynix through elements of a financial restructuring, which constituted countervailable subsidies under 19 U.S.C. § 1677. See Final Affirmative Countervailing Duty Determination: Dynamic Random Access Memory Semiconductors from the Republic of Korea, 68 Fed. Reg. 37,122 (June 23, 2003); Issues and Decision Memorandum for the Final Determination in the Countervailing Duty Investigation of Dynamic Random Access Memory Semiconductors from the Republic of Korea, 68 Fed. Reg. 37,122 (June 23, 2003). Hynix

Consol. Court No. 06-00133                                                                                          Page 3

challenged the determination in this Court in 2005.  Hynix Semiconductor Inc. v. United States, 391 F. Supp. 2d 1337 (CIT 2005) ("Hynix I").  Hynix I recognized Commerce's authority to establish entrustment or direction under 19 U.S.C. § 1677(5)(B)(iii) by showing a government-directed program of financial restructuring transactions involving multiple financial institutions, and affirmed Commerce's methodology for proving such a program by aggregating direct and circumstantial evidence from across the parties and transactions involved.  Id. at 1343. Following remand for further consideration of evidence that the transactions in question may have been motivated by an independent commercial actor, the Court upheld Commerce's determination that the GOK entrusted or directed the 2001 financial contributions to Hynix. Hynix Semiconductor Inc. v. United States, 425 F. Supp. 2d 1287, 1290, 1315 (CIT 2006) ("Hynix II").

On December 30, 2002, Hynix's Creditors' Council adopted a new financial restructuring plan in response to continued financial difficulties and a failed attempt to negotiate a merger or sale of one of Hynix's divisions to Micron.  See Dynamic Random Access Memory Semiconductors from the Republic of Korea: Preliminary Results of Countervailing Duty Administrative Review, 70 Fed. Reg. 54,523, 54,526 (Sept. 15, 2005) ("Preliminary Results"); Issues and Decision Memorandum for the Final Results in the First Administrative Review of the Countervailing Duty Order on Dynamic Random Access Memory Semiconductors from the Republic of Korea, 71 Fed. Reg. 14,174, C-580-851, ARP 04/07/2003-12/31/2003, available at http://ia.ita.doc.gov/frn/summary/korea-south/E6-4071-1.pdf, at *9–10 (Mar. 21, 2006) ("2006

Consol. Court No. 06-00133                                                                                          Page 4

Issues & Decision Memorandum").[1]  The plan, which was similar to the 2001 restructuring plan and included a debt to equity swap, extension of loan maturities, and conversion of interest due into new loans, was approved by Hynix's board of directors on January 7, 2003, and entered onto Hynix's financial statements for 2002.[2]  Id. at *6, 74.  When Commerce initiated the first administrative review of the countervailing duty order, see Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part, 69 Fed. Reg. 56,745 (Sept. 22, 2004), Micron petitioned for review of the December 2002 restructuring plan as alleged new subsidies.

On March 21, 2006, Commerce issued the Dynamic Random Access Memory Semiconductors from the Republic of Korea: Final Results of Countervailing Duty Administrative Review, 71 Fed. Reg. 14,174 (Mar. 21, 2006) ("Final Results").  Commerce concluded that Hynix received additional countervailable subsidies in the December 2002 restructuring program, the GOK entrusted or directed Hynix's creditors to provide the financial contributions, the contributions conferred a benefit on Hynix, and Hynix began receiving the benefit in 2002.  2006 Issues & Decision Memorandum at *9, 76–77.  Commerce found that the subsidies continued to confer a benefit during the April 7, 2003 to December 31, 2003 review period and imposed a countervailing duty rate of 58.22 percent.  Final Results at 14,175.  Hynix

---

[1]The Creditors' Council was led by the Korean Exchange Bank ("KEB"), whose largest shareholder is the GOK.  See 2006 Issues & Decision Memorandum at *34–35.

[2]On January 22, 2003, Hynix issued its audited 2002 financial statements, which included the elements of the restructuring plan and treated the debt to equity swap as convertible bonds to be converted into common stock or new convertible bonds after shareholder approval.  The stock was officially issued on April 15, 2003.  2006 Issues & Decision Memorandum at *74.

and Micron both challenge these findings.

## JURISDICTION & STANDARD OF REVIEW

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) (2000). When reviewing the final results of an administrative review, the court must sustain Commerce's findings, determinations, or conclusions unless they are "'unsupported by substantial evidence on the record, or otherwise not in accordance with the law.'" Fujitsu Gen. Ltd. v. United States, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)).

## DISCUSSION

### I.  Hynix's Motion for Judgment on the Agency Record is Denied.

Hynix challenges Commerce's findings that: 1) Hynix received financial contributions as defined by 19 U.S.C. § 1677(5)(D); 2) the GOK entrusted or directed Hynix's creditors to provide the financial contributions through the restructuring plan; and 3) Hynix received a benefit from the contributions. Under 19 U.S.C. § 1677(5)(B), a countervailable subsidy is defined, in relevant part, as a transaction "in which an authority . . . provides a financial contribution . . . or entrusts or directs a private entity to make a financial contribution. . . . and a benefit is thereby conferred." 19 U.S.C. § 1677(5)(B).

Hynix first challenges Commerce's finding that Hynix received a financial contribution through the restructuring plan on the grounds that the relief provided did not constitute an "infusion of equity" or "direct transfer of funds" under the statute. 19 U.S.C. § 1677(5)(D) defines "financial contribution" as:

> (i) the direct transfer of funds, such as grants, loans, and equity infusions, or the potential direct transfer of funds or liabilities, such as loan guarantees,
> (ii) foregoing or not collecting revenue that is otherwise due, such as granting tax

>   credits or deductions from taxable income,
>   (iii) providing goods or services, other than general infrastructure, or
>   (iv) purchasing goods.

Id.

It is not clear that Hynix raised this issue during the administrative process, thereby preserving the challenge for review before this Court. (See Hynix's Case Br. (Oct. 24, 2005), available at P.R. 142, C.R. 26); 2006 Issues & Decision Memorandum at *71–72; see also Ta Chen Stainless Steel Pipe, Ltd. v. United States, 342 F. Supp. 2d 1191, 1205 (CIT 2004) (quoting Pohang Iron & Steel Co. v. United States, 23 CIT 778, 792 (1999)). Even so, in Hynix I and Hynix II, the Court accepted that debt relief associated with complex restructuring programs of this type may qualify as a countervailable infusion of equity under 19 U.S.C. § 1677(5)(B)(iii). See Hynix I, 391 F. Supp. 2d at 1343; Hynix II, 425 F. Supp. 2d at 1306. In addition, Commerce has consistently treated debt relief as a countervailable subsidy. See, e.g., 19 C.F.R. § 351.508; Notice of Preliminary Results of Countervailing Duty Administrative Review: Certain Hot-Rolled Carbon Steel Flat Products from India, 71 Fed. Reg. 1,512, 1,518 n.5 (Jan. 10, 2006) ("[I]t is the Department's practice to treat any material change to an outstanding loan as a new loan . . . ."). As found in Hynix II, such a practice reflects a reasonable interpretation of the governing statute. See Hynix II, 425 F. Supp. 2d at 1306. Therefore, Commerce's finding that the debt relief granted through the restructuring plan constituted a financial contribution to Hynix is sustained.

Hynix also challenges Commerce's findings that the GOK "entrusted or directed" Hynix's creditors to provide financial contributions through the restructuring plan, asserting that

Commerce lacked direct evidence to support its conclusion.³  This Court stated in Hynix I that "[i]n appropriate circumstances, Commerce may permissibly use circumstantial evidence to prove, in whole or in part, the existence of entrusted or directed financial contributions under 19 U.S.C. § 1677(5)(B)(iii)."⁴  Hynix I, 391 F. Supp. 2d at 1348 (citing AK Steel v. Untied States, 192 F.3d 1367, 1373–76 (Fed. Cir. 1999)).  In reaching a finding of entrustment or direction, "proof of motive, propensity, proclivity, opportunity, and capacity [may be] derived by inference from circumstantial evidence.  Individually, each of these inferences would be insufficient to establish the existence of a program of entrustment or direction; but, together, this collection of inferences could permit such a conclusion."  Id. at 1349 (footnote omitted).  The collection of inferences must be reasonable based on the available circumstantial evidence.  Id. at 1343.

    The circumstantial evidence presented by Commerce strongly supports Commerce's findings that the GOK entrusted or directed Hynix's creditors to provide financial contributions through the restructuring plan.  Commerce provided evidence that Hynix was again facing a dire financial situation and "desperately needed new financial assistance from its creditors in order to survive as a viable entity."  Preliminary Results at 54,528.  Based on negative financial indicators and Hynix's likely inability to obtain comparable commercial loans,

---

   ³Hynix also argues that Commerce improperly refused to consider the commercial reasonableness of the creditors' actions with respect to the finding of entrustment or direction. As stated in 19 U.S.C. § 1677(5)(B) and (E)(i), commercial reasonableness applies only to the finding of benefit conferred by a subsidy, and not to the analysis of entrustment or direction.

   ⁴Hynix I explained that, because "benefit-conferring contributions made by private parties pursuant to government entrustment or direction . . . [are] by their furtive nature, [ ] likely to be difficult to discern and even harder to prove by the requisite substantial evidence," it is permissible for Commerce to "rely heavily on circumstantial evidence," so long as it fairly weighs the evidence invoked in support of such a finding.  Id. at 1347–48.

Commerce determined that Hynix was unequityworthy and "kept alive only through debt restructuring programs." 2006 Issues & Decision Memorandum at *5, 9–10, 63 (quotes omitted). Pointing to evidence of an ongoing plan to assist Hynix, including statements by senior GOK officials expressing concern for the potential political and economic effects of Hynix's failure, Commerce found that the GOK had a policy and motive to entrust or direct assistance to Hynix.[5] See Preliminary Results at 54,529; 2006 Issues & Decision Memorandum at *9–11, 21–26. In addition, Commerce presented evidence that the GOK had the ability to influence or direct the creditors' actions. Commerce noted that "the GOK-owned or controlled banks dominated [Hynix's] Creditors' Council," and found that "[a]lthough government ownership by itself is not sufficient to result in a finding that a financial institution is a government entity, the high level of ownership by the government in Hynix's creditors gave it the ability to exercise substantial influence over the activities of these entities, including their lending decisions with regard to Hynix." Preliminary Results at 54,530. Commerce also pointed to other instances in which the GOK influenced or directed the decisions of creditors in support of its finding that the GOK regularly exercised such control.[6] See id. at 54,528, 54,531; 2006

---

[5] Although Commerce is not permitted to use past findings of government-directed subsidies to establish entrustment or direction, it may use past subsidies as a starting point to show an ongoing program of assistance so long as it provides evidence to support reasonable inferences that such policies "continued into the period of investigation." See AK Steel, 192 F.3d at 1376.

[6] Commerce also noted that "[t]he contributions in this case are loans and equity infusions . . . . [which] would normally be vested in the government," Preliminary Results at 54,528, which brings the contributions firmly within the scope of 19 U.S.C. § 1677(5)(B)(3) (" . . . if providing the contribution would normally be vested in the government and the practice does not differ in substance from practices normally followed by governments.").

Issues & Decision Memorandum at *32–35.  Together, this evidence reasonably supports Commerce's conclusion that the GOK entrusted or directed Hynix's creditors to provide assistance through the 2002 restructuring plan.

Hynix also challenges Commerce's finding that Hynix received a benefit from the infusion of equity, claiming that the restructuring was consistent with normal market practices. Hynix argues that Commerce improperly evaluated the rationality of the investments by refusing to consider as part of its analysis the future interests of existing or "inside" creditors, and the resulting "commercial reasonableness" of their actions.

Under 19 U.S.C. § 1677(5)(E)(i), a benefit is deemed to have been received as a result of an equity infusion "if the investment decision is inconsistent with the usual investment practice of private investors."  Id.  The model for economic analysis used by Commerce to evaluate whether a benefit was received under the terms of this provision is based on the future interests of an outside investor with no existing ties to the company.[7]  See, e.g., Preliminary Results at 54,525.  Commerce will normally use a prospective outside investor in a particular company to perform such an analysis, but when none exists, it will determine the company's equityworthiness by projecting the rational future interests of a theoretical private investor.  See 2006 Issues & Decision Memorandum at *3–4.  In the instant case, Hynix argues that Commerce improperly applied this analysis by failing to consider the rational future interests of an investor with an existing stake in the company's survival.  (See Hynix's R. 56.2 Mot. for J. on the

---

[7] In Hynix II, this Court accepted as reasonable Commerce's approach for determining whether investment would be rational based on the future interests of an outside or theoretical private investor.  Hynix II, 425 F. Supp. 2d at 1314 (citing British Steel Corp. v. United States, 10 CIT 224, 231, 632 F. Supp. 59, 65 (1986)).

Consol. Court No. 06-00133                                                                                                    Page 10

Agency R. ("Hynix Br.") 31.)  Commerce rejected this approach in the 2006 Issues & Decision Memorandum, arguing that the commercial reasonableness of the actions of inside investors is not a required determination and that Hynix's proposed approach would require examination of the subjective motivations and incentives of the existing investors.  2006 Issues & Decision Memorandum at *62–63.

Although Commerce's approach may seem simplistic, the court finds insufficient reason on the facts of this case to reject its approach.  Where, as here, there is strong evidence of government entrustment or direction, it is extremely difficult for Commerce to discern the government-imposed motives from the commercial motives of inside investors.  Even if in a particular case Commerce would be required to assess independent evidence of the value of an investment to an inside investor, in this case the independent economic valuations that would be required for such an inquiry were not presented to Commerce at the time of its review.[8]  The court therefore finds that Commerce's approach in the instant case was reasonable and in accordance with law.

Commerce concluded that Hynix was not equityworthy at the time of the restructuring on the basis of objective analyses and financial data.  Commerce cited reliable industry reports in support of its findings that Hynix was "'technically bankrupt, kept alive only through debt restructuring programs,'" and that it presented "'a negative investment case.'"

---

[8]Hynix points to estimations of value included in the Deutsche Bank ("DB") Report in support of its assertions.  Commerce provided sufficient explanation in the Preliminary Results and 2006 Issues & Decision Memorandum to support its conclusion that the DB Report was not a reliable and independent source of economic analysis.  See Preliminary Results at 54,526; 2006 Issues & Decision Memorandum at *47, 62–63 ("[G]iven DB's relationship with KEB and the GOK, the Department finds that the DB Report does not constitute . . . objective analysis.").

2006 Issues & Decision Memorandum at *63 (quoting Morgan Stanley Hynix Semiconductor Equity Research (Sept. 25, 2002) and Merrill Lynch: Hynix Semiconductor, Inc.: Comment (Nov. 27, 2002)).  Commerce noted that the DB Report, which provided the sole positive outlook on Hynix's situation, recommended only that existing creditors minimize their losses, and was produced at the request of the KEB and GOK.  Id. at *61–63; see also Preliminary Results at 54,526.  Commerce also determined that Hynix's "net profit margin, return on equity, and return on assets were all negative during this period.  The debt-to-equity, current and quick ratios all demonstrate that Hynix was in danger of not being able to make all of its payments."  Id. at 54,526–27.  This evidence provides substantial support for Commerce's finding that Hynix was unequityworthy at the time of the restructuring and therefore received a benefit from the contributions.

   Accordingly, Commerce's determination that Hynix received countervailable subsidies through the December 2002 restructuring plan is sustained, and Hynix's motion for judgment on the agency record is denied.[9]

---

[9]Micron and Hynix both seek to add to the record various materials including financial information, elements of Korean bankruptcy law, proposed economic theories, and evidence of general Korean accounting principles in support of their respective motions.  (See Micron's Mot. for Remand to Supplement the Admin. R. and Reconsider the Timing of the April 2003 Debt-Equity Swap (Apr. 3, 2007); Hynix Br. at Attach. 1–3.)  The court orally rejected Micron's motion.  As to Hynix's new material, the court will take judicial notice only of Korean law, although the availability of reorganization proceedings in bankruptcy does not change the analysis.  The court is not required to determine from this record whether or not the restructuring was more beneficial or equally beneficial to a hypothetical reorganization.  Because the documents sought to be added were available at the time of Commerce's review and do not demonstrate new or changed circumstances, the parties should have provided these materials at the appropriate time during Commerce's review.  See Beker Indus. Corp. v. United States, 7 CIT 313, 316 (1984).  Hynix's additional materials will therefore not be considered by the court, and
(continued...)

## II. Micron's Motion for Judgment on the Agency Record is Denied.

Micron challenges Commerce's determination that Hynix received the benefit of the restructuring program in 2002, arguing that the benefit did not accrue until the transactions were completed in 2003 through board and shareholder approvals and issuance of the stock certificates.[10]  Under 19 C.F.R. § 351.507(b), Commerce "consider[s] the benefit to have been received on the date on which the firm received the equity infusion."  Id.  Deciding when the equity infusion occurs where it is in the form of debt relief is not a simple task.

The essence of the court's decision in Part I affirming Commerce's determination that Hynix received a financial contribution is that the restructuring program itself, which is intended to improve the future potential of the company, constitutes the countervailable event.  Micron's argument that the issuance of the actual stock certificates is the controlling event is therefore without merit.  Commerce's finding that the benefit was received in 2002 instead depends primarily on the reflection of the transactions on Hynix's financial statements.  Commerce noted that Hynix recorded the effect of the restructuring on its 2002 financial statements, including the release from existing debt obligations and parallel increase in equity capital resulting from the debt to equity swap.  2006 Issues & Decision Memorandum at *76–77.

---

[9](...continued)
Micron's Motion for Remand to Supplement the Administrative Record is denied.

[10]Micron raises this issue because, in accordance with 19 C.F.R. § 351.524(b)(1), the benefit of the equity infusion is allocated over five years, which means that according to Commerce's determination the increased duty rate will run from 2002 to 2006.  Micron argues that because the liquidation of entries was not suspended until April 2003, Hynix's entries for 2002 were not countervailed at the new rate, effectively shielding Hynix from one-fifth of the increased duty that would otherwise apply.  (See Pl. Micron Tech., Inc.'s Reply Br. 13.)

Commerce acknowledged that the statements indicated that the convertible bonds derived from the debt to equity swap would be converted into stock or new convertible bonds following shareholder approval in 2003, but also noted that because the Creditors' Council controlled Hynix and was entrusted or directed by the GOK to carry out the restructuring, the same entities that approved the restructuring as creditors in December 2002 had control over approval of the plan as shareholders in February 2003. Id. at *77. The finding of entrustment or direction, which the court has sustained, underlies Commerce's determination about the nature of the 2003 events. Commerce concluded that although board and shareholder approval "might be significant in other instances, . . . the facts of this case deem these events pro forma."[11] Id. Commerce therefore determined that the benefit was received when the plan was approved in December 2002. Id. Given the inherent difficulty in deciding the timing question, the court must defer to Commerce. There is nothing in this record which compels Commerce to choose the pro forma actions of 2003 over the crucial decisionmaking that occurred in 2002.

Although Micron now asserts that Commerce should have considered additional information,[12] including the financial statements of Hynix's creditors, which may have reflected

---

[11]Micron relies on a previous decision in which Commerce did not consider a debt to equity swap to constitute debt relief because it was pending final approval by an entity that might have rejected it. See Final Affirmative Countervailing Duty Determination: Grain-Oriented Electrical Steel From Italy, 59 Fed. Reg. 18,357 (Apr. 18, 1994) ("GOES"). GOES is clearly distinguishable from the instant case because the pending approval in GOES was that of the European Community, which operated as a truly independent decisionmaking body. Id. In this case, the substantial overlap between creditors and shareholders and the fact that the decisions were entrusted or directed by the GOK indicates that the approval process was pro forma, and not dependent upon the substantive decision of an independent body.

[12]See supra note 9.

Consol. Court No. 06-00133                                                                                               Page 14

the transactions differently from Hynix's statements, the court finds no reason to reject Commerce's conclusion as to the timing of the benefit to Hynix. Commerce's decision was properly based on the documents presented to it at the time of the review, and the finding that the benefit accrued in December 2002 is supported by substantial evidence on the record. Accordingly, Micron's motion is denied.

## CONCLUSION

For the foregoing reasons, Hynix's Motion for Judgment on the Agency Record is denied. Micron's Motion for Judgment on the Agency Record is denied. Micron's Motion for Remand to Supplement the Administrative Record is denied. Commerce's determinations in the first administrative review are sustained.

                                                  /s/ Jane A. Restani
                                                          Jane A. Restani
                                                          Chief Judge

Dated: This 19th day of December, 2007.
       New York, New York.

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| MICRON TECHNOLOGY, INC, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> UNITED STATES, : <br> : <br> Defendant, : <br> : <br> and : <br> : <br> QIMONDA NORTH AMERICA CORP.; HYNIX : <br> SEMICONDUCTOR INC.; and HYNIX : <br> SEMICONDUCTOR AMERICA INC., : <br> : <br> Defendant-Intervenors. : | Before: Jane A. Restani, Chief Judge <br><br> Consol. Court No. 06-00133 |

## JUDGMENT

This case having been submitted for decision and the Court, after deliberation, having rendered a decision therein; now, in conformity with that decision,

IT IS HEREBY ORDERED that Plaintiff Micron Technology, Inc.'s Motion for Judgment on the Agency Record is denied. Defendant-Intervenors Hynix Semiconductor Inc. and Hynix Semiconductor America Inc.'s Motion for Judgment on the Agency Record is denied. Plaintiff Micron Technology, Inc.'s Motion for Remand to Supplement the Administrative Record is denied. Commerce's determinations in the first administrative review are sustained.

                                                 /s/ Jane A. Restani  
                                                 Jane A. Restani  
                                                 Chief Judge

Dated: This 19th day of December, 2007.  
New York, New York.

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____   By: _____
                                        Deputy Clerk